UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| VERMONT FEDERATION OF SPORTSMEN'S CLUBS, *et al.* <br><br> *Plaintiffs,* <br><br> v. <br><br> MATTHEW BIRMINGHAM, *et al.*, <br><br> *Defendants.* | Case No. 2:23-cv-710 |

## PLAINTIFFS' RESPONSE TO
## NOTICE OF SUPPLEMENTAL AUTHORITY

NOW COME Plaintiffs, by and through undersigned counsel, and respond to the Notice of Supplemental Authority filed at ECF No. 31:

1. *Ocean State Tactical*, No. 23-1072, 2024 U.S. App. LEXIS 5723, at *24 (1st Cir. Mar. 7, 2024) wrongly dismissed Supreme Court precedent repeatedly protecting arms currently in common use for lawful purposes. *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 152 S.Ct. at 2128 (2022) (*Heller* explained that the Second Amendment protects weapons in common use; even if prior "laws prohibited the carrying of handguns because they were dangerous and unusual weapons [at the time], they provide no justification for laws restricting the public carry of weapons that are unquestionably in common use today"); *see also id.* at 2143; *Caetano v. Massachusetts*, 577 U.S. at 411, 412 (2016); and *District of Columbia v. Heller*, 554 U.S. 570, 624, 627 (2008).

2. *Ocean State* at *15-18 wrongly analyzed the government's proposed analogues. Under *Bruen,* analogues must burden Second Amendment rights in a similar

1

manner and for similar reasons as the challenged regulation. *Bruen*, 152 S.Ct. at 2122, 2133 (Analogues must be relevantly similar); *Antonyuk v. Chiumento,* 89 F.4th 275, 300-05 (2d Cir. 2023) (setting forth test); *see id.* at 331-33, 339-42, 355-63, 363-64, 365-69, 374-76, 384-87 (applying test by closely comparing statutory text and the type, scale, and history of the burdens imposed by the proposed analogues to those of the modern regulation)

3. In answering *Bruen*'s "how" question, rather than looking at the type of burden imposed – a ban – *Ocean State* looked generally at the burden of the magazine ban on self-defense and assessed that it was "negligible." *Ocean State* at \*12. The court then used that generalized finding of a negligible burden as the comparison to the state's inapt analogues, including those from the 20th Century. *Bruen*, 142 S.Ct. at 2154 n.28 (20th Century laws irrelevant because they do "not provide insight into the meaning of the Second Amendment."). In answering *Bruen*'s "why" question, the court again erred by looking generally at the proposed analogues and finding that "the greater dangers posed by some weapons" were a sufficient "justification for firearm regulation." *Ocean State*'s analysis amounted to the generalized interest-balancing test warned against by *Bruen*, 142 S.Ct. at 2133 n.7. (Courts should not "engage in independent means-end scrutiny under the guise of an analogical inquiry"). The flawed analysis is revealed by the fact that it would lead to the banning of the handguns protected by *Heller* (citizens could use long guns instead) and would support virtually any arms regulation.

4. The First Circuit wrongly inquired into how many shots are typically used in self-defense, rather than what weapons are commonly chosen for self-defense. *Ocean State* at \*11 (looking at how many shots were actually fired) and \*24 (ownership

rates are "ancillary" to the question of common use), contra. *Heller*, 554 U.S. at 629 (common use is a question of what weapons are "*chosen* by Americans for self-defense") (*emphasis added*) and *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 256 (2d Cir. 2015) ("'common use' is an objective and largely statistical inquiry").

5. Neither *Heller*, *McDonald*, nor *Bruen* permit a court to uphold a regulation because it characterizes a burden on self-defense as "minimal." Yet that is precisely what *Ocean State* did. *Ocean State* at *11-12.

6. *Ocean State* characterized laws restricting the *carry* of Bowie knives as bans of possession, *Id*. at *12, 17, disregarding the differences between historical restrictions on *carrying* certain weapons and modern bans on possessing them.

7. *Ocean State* incorrectly held that because "law advances more slowly than the technology it regulates," Rhode Island could regulate LCMs even without showing that they were a "dramatic" technological change.  *Id*. at * 23. This holding flies in the face of *Bruen,* 142 S.Ct. at 2132 ("[T]he Second Amendment extends, prima facie, to all instruments that constitute bearable arms, even those that were not in existence at the time of the founding.") It also runs counter to *Bruen*'s holding requiring a *dramatic* technological change, *Bruen*, 142 S.Ct. at 2131-32, and counter to the manner in which every other constitutional right is treated as technology evolves. See, e.g., *Kyllo v. United States*, 533 U.S. 27, 34, 121 S. Ct. 2038, 2043 (2001) (heat imaging technology covered by Fourth Amendment), *O'Connor-Ratcliff v. Garnier*, No. 22-324, 2024 U.S. LEXIS 1216 (Mar. 15, 2024) (social media covered by First Amendment).

WHEREFORE, Plaintiffs respectfully suggest that the decision of the First Circuit sheds little light on the applicable inquiries that this Court must make.

Respectfully submitted,

| | |
|---|---|
| HARDIN LAW OFFICE | DIGENOVA & TOENSING, LLP |
| By: /s/ *Matthew D. Hardin*<br>     Matthew D. Hardin, Vt. Bar. 5815<br>1725 Eye Street NW, Suite 300<br>Washington, DC 20006<br>Phone: (202) 802-1948<br>Email: Matt@MatthewHardin.com | By: */s/ Brady C. Toensing*<br>     Brady C. Toensing<br>1775 Eye Street NW, Suite 1150<br>Washington, DC 20006<br>Phone: (202) 289-7701<br>Email: brady@digtoe.com |
| *Attorney for Plaintiff* | *Attorneys for Plaintiff* |