UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| VERMONT FEDERATION OF SPORTSMEN'S CLUBS, *et al.*<br><br>   *Plaintiffs*,<br><br>  v.<br><br>MATTHEW BIRMINGHAM, *et al.*,<br><br>   *Defendants*. | Case No. 2:23-cv-710 |

# REPLY IN FURTHER SUPPORT OF MOTION TO EXCLUDE EXPERT TESTIMONY OR ALTERNATIVELY FOR A *DAUBERT* HEARING

  NOW COME Plaintiffs, and file this Reply Memorandum of Law in Further Support of their Motion to Exclude Expert Testimony, or alternatively for a *Daubert* hearing.

**I. Introduction**

  Defendants claim Plaintiffs' *Daubert* argument "is a merits argument recast as a *Daubert* challenge." ECF37 at 1-2. As Vermont would have it, Plaintiffs have not sufficiently challenged the research methodology of its experts, and the State can inject whatever evidence it likes regardless of relevance. The State's arguments improperly collapse Fed R. Evid. 702's four factor test into only one hybrid factor: whether the experts are qualified in the abstract to opine on various topics. In doing so, Vermont ignores whether the experts are qualified to opine on various issues *in this particular case*, and then argues the Court has no gatekeeping function in a nonjury context.

  Fed. R. Evid. 702 governs expert testimony regardless of who the trier of fact is. *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994) ("the use of expert testimony is

1

not permitted if it will 'usurp either the role of the trial judge [to determine the issues of law]... or the role of the jury...") (cleaned up). The State may only present evidence that meets the Rule 702 standard, because inadmissible or irrelevant evidence will waste time and resources, is inherently prejudicial to Plaintiffs under Fed. R. Evid. 403, and serves no purpose except to confuse the issues.

## II.     Factual and Procedural Posture

The State makes much of the fact that other courts have relied on the testimony presented by its experts, and it casts the court that disagreed with the testimony of its experts and questioned the reliability of these experts as an "outlier." ECF37 at 7, n. 3. In doing so, Vermont muddles the posture of this case and others.

First, and perhaps most crucially, it does not appear that a Fed. R. Evid. 702 challenge was filed by anyone in the State's cited case. ECF37 at 5-6. It is unsurprising that no court addressed a challenge never made. Vermont uses this silence to argue that because evidence was admitted in other cases without objection, that same evidence must be admitted in this case over Plaintiffs' objection. But "cases cannot be read as foreclosing an argument that they never dealt with." *Waters v. Churchill*, 511 US 661, 678 (1994) (plurality opinion); *see also, e.g., Texas v. Cobb*, 532 U.S. 162, 169 (2001) ("rights are not defined by inferences from opinions which did not address the question at issue"); *Plaut v. Spendthrift Farm*, 511 U.S. 211, 232 n.6 (1994) ("the unexplained silences of our decisions are not entitled to precedential weight").

Second, the State is *also* wrong to suggest that Plaintiffs never challenged the research methodology of its experts. Plaintiffs challenged the methodology of Lucy Allen, ECF30 at 8, and Dennis Baron, *Id*. at 10, n. 5, and demonstrated that the

"methodology" of Robert Spitzer, John Donohue, and Randolph Roth is antithetical to *Bruen*. *Id*. at 10-13.

Notwithstanding the State's misunderstanding of Plaintiffs' argument, there is at least some room for agreement. The State suggests that any *voir dire* of experts can take place contemporaneously with them being called as a witness to avoid the need to call anyone twice and to streamline the hearing. ECF37 at 13. Plaintiffs have no objection to this streamlined procedure. It is, however, still necessary to establish each expert's qualifications to testify, including that such expert meets the *Daubert* standard. *Kellner v. NCL (Bah.)*, Ltd., No. 15-23002-CIV, 2016 U.S. Dist. LEXIS 186087, at *2 (S.D. Fla. Aug. 17, 2016) ("courts have fashioned a variety of mechanisms for ensuring the reliability and relevance of expert witness testimony… One such mechanism is, instead of holding a pre-trial *Daubert* hearing, conducting a voir dire of the expert witness … to evaluate the witness's proposed testimony.").

## III. Standard of Review

Amendments to Fed. R. Evid. 702 took effect on December 1, 2023. These recent amendments "emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702, 2023 Advisory Committee notes. The 2023 Advisory Committee notes specifically emphasized that some courts had erred by considering the "sufficiency of an expert's basis, and the application of the expert's methodology, [to be] questions of weight and not admissibility" and that "[t]hese rulings are an incorrect application of Rules 702 and 104(a)." Moreover, the Advisory Committee "emphasize[d] that each expert opinion must stay within the bounds of what can be concluded from a reliable application of the

3

expert's basis and methodology." Expertise on one topic is not expertise on any other topic. *United States v. Santini*, 656 F.3d 1075, 1078-79 (9th Cir. 2011) ("An expert in one field… cannot express an opinion relying on data that requires expertise in another field.").

All four Rule 702 factors must be met for expert testimony to be admissible. *United States v. Davis*, 970 F.3d 650, 660 (6th Cir. 2020) ("Federal Rule of Evidence 702 codifies [the *Daubert*] standards, imposing four requirements that likewise seek to ensure that scientific testimony is both relevant and reliable."). Specifically, Fed. R. Evid. 702 requires the State to demonstrate that:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

The bar is intentionally set high because experts testify as to matters that no other witness would be permitted to inject into a case, and the nature of expert testimony is such that a factfinder is inherently relying on expertise relating to topics the factfinder is unlikely to understand. *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004) (cautioning against a propensity to assign "talismanic significance" to expert testimony). Expert testimony on issues of law is especially dangerous. *United States v. Curtis*, 782 F.2d 593, 599 (6th Cir. 1986) (confusion caused "by opposing opinions of law offered by different experts.").

## IV.   Argument

The State's proffered testimony fails to comply with Rule 702 as interpreted and clarified by *Daubert*. None of its experts offers any relevant expert testimony under Rule

702 because relevance in this case is governed by the Supreme Court's holding in *Bruen*. And even if the expert testimony were somehow relevant, it is also methodologically unsound under *Daubert* and separately inadmissible on that ground.

### a. Lucy Allen's Testimony is Inadmissible.

The State claims Professor Allen, an economist, has expertise to analyze data. It asserts that the only challenge Plaintiffs made to Allen's testimony is based on hearsay, ECF37 at 6, disregarding that Plaintiffs, citing another District Court's holding, also alleged her testimony suffered from fundamental data quality flaws. ECF30 at 8; *Duncan v. Bonta*, No. 17-cv-1017-BEN (JLB), 2023 U.S. Dist. LEXIS 169577, at *34 (S.D. Cal. Sep. 22, 2023) ("Allen's methodology… is incomprehensible."). It appears the State asserts that Allen's expertise is to "review and analyze data," perhaps specifically self-defense data. *Id*. If indeed that is the field of Allen's expertise, it is inadmissible for two reasons: 1) it is irrelevant, and 2) simple mathematics is not expertise.

Most fundamentally, Allen's testimony is inadmissible because basic math is not expertise. No expert is necessary to complete a "simple percentage comparison or elementary mathematics." *Golden v. World Sec. Agency, Inc.*, 884 F. Supp. 2d 675, 691 (N.D. Ill. 2012); see, e.g., *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005) ("A mathematical calculation… well within the ability of anyone with a grade-school education is, in our opinion, more aptly characterized as a lay opinion under Fed. R. Evid. 701."); *Stratton v. Dept. for the Aging*, 132 F.3d 869, 877 (2nd Cir. 1997) (no expert was required to compile a chart using simple arithmetic).

Allen also says nothing about the relevant Second Amendment commonality test, which asks what weapons are commonly "chosen by Americans for self-defense." *Heller v. District of Columbia* 554 U.S. 570, 629 (2008). Even as to the irrelevant test Allen

5

and the State swap in place of *Heller*'s test, Allen offers no expertise because simple statistics and the calculation of percentages are within the competence of laymen. To be sure, at least one court has held that analysis of "large data sets" or "collection of random samples" may require "expertise in statistical analysis," *United States v. Dish Network LLC*, 75 F. Supp. 3d 916, 933 (C.D. Ill. 2014). Allen's work, however, suffers from a lack of random sampling and her data sets are unreliable. *Miller v. Bonta*, No. 19-cv-01537 BEN (JLB), 2023 U.S. Dist. LEXIS 188421, at *80-81 (S.D. Cal. Oct. 19, 2023) ("The database [Allen relies upon] explicitly states that it is not intended to be comprehensive. … Her results cannot be tested because she does not identify the specific incidents or how she scored the gun-type variables attributed to each incident. Consequently, there is no way to check her analysis or her math."). Even the State concedes Allen's work is based on questionable data. ECF37 at 7 (there is a "lack of any governmental or other official source that systematically tracks rounds fired in self-defense."). This testimony should therefore be excluded.

  **b. Dennis Baron's Testimony is Inadmissible.**

  The State argues that Professor Baron will testify regarding "lexical evidence" of repeater firearms throughout history. ECF37 at 7. Long after *Heller* held that the Second Amendment is an individual right, Baron argued it is a collective right, and that his analysis of corpus linguistics shows that the U.S. Supreme Court got things wrong. Dennis Baron, *Corpus Evidence Illuminates the Meaning of Bear Arms*, 46 Hastings Const. L.Q. 509 (2019). Specifically, Baron determined "[f]ounding era sources almost always use *bear arms* in an unambiguously military sense," *Id*. at 510 (emphasis in original), contrary to the conclusion in *Heller* that the phrase "in no way connotes participation in a structured military organization." 554 U.S. at 584.

Because Baron's own scholarship suggests that his opinion based on corpus linguistics expertise would lead to *Bruen* and *Heller* being overturned, and the individual, civilian right to keep and bear arms to be abolished, Baron cannot shed light on any relevant inquiry under those two decisions. And because he confesses that his scholarship conflicts with binding Supreme Court precedent, his methodology cannot be a sound basis for interpreting and applying that precedent.

### c. Randolph Roth's Testimony is Inadmissible.

The State proffers Professor Roth will testify as to the "history of violence and use of firearms in the United States." ECF37 at 8. Roth observes that violence increased after the advent of breechloading weaponry, but the State argues these observations should be ignored or contextualized. *Id.*

Vermont attempts to contextualize Roth's inconvenient statements tracing the rise in violence back to breechloaders, but Roth is also on record stating that mass murder using firearms was a fact of life in the *Colonial* era. *Miller*, 2023 U.S. Dist. LEXIS 188421 at *79 n.207 (citing Roth "from the colonial era to the early twentieth century, mass murders were carried out by large groups of individuals acting in concert.") Indeed, Roth states that the by 1857, when Smith & Wesson introduced a mass market breechloader, the "homicide crisis was already well underway." ECF24-8, ¶32. Roth is therefore not addressing any modern societal concern at all, but rather one that predates our existence as a Nation. Testimony from Roth in *Miller* conceding that mass murder using firearms has been a fact of life since the early 17th century also undercuts the State's argument in this case that the development of modern weaponry led to unprecedented change. *Miller*, 2023 U.S. Dist. LEXIS 188421 at *79 n.207.

7

Roth's testimony should be excluded because it is inconsistent with the relevant *Bruen* inquiry. *N.Y. State Rifle & Pistol Ass'n, v. Bruen*, 142 S. Ct. 2111, 2132 (State required to show "unprecedented societal concerns" or "dramatic technological changes" to invoke a "nuanced approach" to Second Amendment rights). Because it is also internally inconsistent, with Roth suggesting simultaneously that modern firearms are dramatically different from past firearms *and* that the modern rise in violence traces back to breechloaders *and* that mass murder is not a new phenomenon at all but was common in the Colonial Era, Roth's testimony is also methodologically unsound and impermissible under *Daubert*.

### d. Robert Spitzer's Testimony is Inadmissible.

Professor Spitzer will testify about "the history of gun laws, of gun policy in American politics, and related historical, legal, political, and criminological issues." ECF37 at 10. The State claims that he transforms laws and other judicially noticeable materials into expert testimony "[b]y analyzing, organizing, and presenting a huge mass of historical data… giving the Court the factual inputs needed to engage in 'reasoning by analogy.'" *Id*.

Generously reading Vermont's pleadings in its favor and assuming it does not intend to rehash Spitzer's failed *amicus* filings from *Bruen* under the guise of expert testimony, it appears Spitzer will attempt to explain why various historical laws were enacted and why certain types of violence erupted at certain time. But this type of testimony should be excluded even if he is found to possess relevant expertise. "Courts routinely exclude as impermissible expert testimony as to intent, motive, or state of mind," *McGee v. Zurich Am. Ins. Co.*, 2021 U.S. Dist. LEXIS 244319, 2021 WL 6070590, at *8 (D. Ariz. Dec. 22, 2021) (quoting *Siring v. Oregon State Bd. of Higher Educ.*, 927

8

F. Supp. 2d 1069, 1077 (D. Or. 2013)). Spitzer also cannot testify to the purpose of historical laws or shed any light on them other than what the text says. Even "statements as to legislative intent made by legislators subsequent to the enactment of a statute are typically not entitled to great weight," but may be considered "expert opinion concerning [the statute's] proper interpretation." *Barnes v. Cohen*, 749 F.2d 1009, 1015-16 (3d Cir. 1984) (cleaned up). Here, Spitzer has no direct knowledge of the historical statutes he purports to analyze, and any individual who would have had such expertise as to 19th century laws has long since passed away.

The Court should also exclude Spitzer's proposed testimony because the relevant test under *Bruen* is to look at the laws themselves and not to any expert's interpretation of such laws, and because Spitzer himself has shown his interpretation is contrary to Supreme Court precedent, as evidenced by his rejected *amicus* arguments.

**e. John Donohue's Testimony is Inadmissible.**

Professor Donohue will testify as to "the question of whether Vermont's laws address a 'societal problem' that 'past generations experienced.'" ECF37 at 11. Like Spitzer, Donohue has no expertise on the legislative intent of Vermont's specific laws at issue here. Even if he did have such knowledge, his testimony would still be inadmissible because interpretations of law are reserved for the courts. *Pergament v. Tracey,* 557 B.R. 294, 300 (Bankr. E.D.N.Y. 2016) (collecting cases and explaining that an expert cannot invade the role of the court in interpreting the law or the role of counsel in making argument). Plaintiffs, therefore, assume Donohue intends instead to testify as to "societal problems" past generations did or did not experience, and how they are different from the societal problems faced by modern society vis-a-vis "LCMs."

9

When Donohue presented this testimony to a sister court, that court found it was based upon "abject conjecture," and that Donohue's opinions were "not at all obvious" and even "ironic" in light of the data he purported to rely upon. *Miller,* 2023 U.S. Dist. LEXIS 188421 at *85. "[A]bject conjecture" by Donohue should be excluded because it cannot satisfy *Daubert*'s requirement for reliable research methodologies. Donohue's testimony should also be excluded as irrelevant and improper.

## V. Conclusion

The Court should exclude the State's proposed expert testimony because it does not meet Rule 702's four factor test. This testimony is irrelevant under *Heller* and *Bruen*, and methodologically unsound or improper, or both.

Respectfully submitted,

| | |
|---|---|
| HARDIN LAW OFFICE | DIGENOVA & TOENSING, LLP |
| By: /s/ *Matthew D. Hardin*<br>     Matthew D. Hardin<br>1725 Eye Street NW, Suite 300<br>Washington, DC 20006<br>Phone: (202) 802-1948<br>Email: Matt@MatthewHardin.com | By: */s/ Brady C. Toensing*<br>     Brady C. Toensing<br>1775 Eye Street NW, Suite 1150<br>Washington, DC 20006<br>Phone: (202) 289-7701<br>Email: brady@digtoe.com |
| *Attorney for Plaintiff* | *Attorneys for Plaintiff* |

### Certificate of Service

I hereby certify that on this the 9th day of April 2024, I served a true and correct copy of the foregoing, upon Defendants via filing the same through CM/ECF.

/s/ Matthew D. Hardin
Matthew D. Hardin