UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| VERMONT FEDERATION OF SPORTSMEN'S )<br>CLUBS; POWDERHORN OUTDOOR SPORTS )<br>CENTER, INC.; JPC, INC. (d/b/a BLACK DOG )<br>SHOOTING SUPPLIES; PAULE DAME; and )<br>MARSHA J. THOMPSON; )<br>        Plaintiffs, )<br>)<br>        v. )<br>)<br>MATTHEW BIRMINGHAM, Director of the )<br>Vermont State Police, in his Official and Personal )<br>Capacities; CHARITY CLARK, Attorney General )<br>of the State of Vermont, in her Official and )<br>Personal Capacities; and SARAH GEORGE, )<br>State's Attorney for Chittenden County, in her )<br>Official and Personal Capacities; )<br>        Defendants. ) | Case No. 2:23-cv-710 |

# DEFENDANTS' SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

## INTRODUCTION

The laws that plaintiffs challenge are modest regulations that in no way burden the "core" right of individual self-defense protected by the Second Amendment. They are also important public safety measures aimed at reducing deaths and injuries in mass shootings and deterring impulsive gun violence, including suicides. Plaintiffs testified at hearing that they would like to purchase and sell large-capacity magazines and would like to purchase and sell firearms with no waiting period. *E.g.,* Tr. 5/23/24 at 77:15 ("Nobody seems to be overly happy with" waiting period.); *id.* at 14:7 ("a comfort to have extra rounds available"); 21:10-14; 32:10-15; 37:23-24; 40:21-22 (customers "react with disdain when they find out that they can't purchase something that they want to purchase"); 71:1-3, 75:23-76:4. Missing, however, was any showing that Vermont has enacted a "complete ban" on any firearm or otherwise interfered with protected

Second Amendment rights. The Court should deny Plaintiffs' request for a preliminary injunction and leave these public safety measures in place.

## ARGUMENT

Plaintiffs mis-apply *Heller, Bruen,* and binding Second Circuit precedent. They disregard *Heller's* holding that regulations on the commercial transfer of firearms are presumptively lawful. And they erroneously depict 13 V.S.A. § 4021's restriction on large-capacity magazines as a "complete ban" on common firearms. But Plaintiffs themselves re-affirmed in their testimony that they own, use, and sell firearms that work with compliant magazines (10 rounds or less for a long gun, 15 rounds or less for a handgun). What's more, Plaintiffs' testimony undermined any showing of irreparable harm: Plaintiffs have numerous firearms and ammunition and clearly are not experiencing any burden on their Second Amendment rights.

I.  **The 72-hour waiting period is presumptively constitutional and, in any event, does not burden any Second Amendment right.**

**A.** Both the Supreme Court in *Heller* and the Second Circuit in *Gazzola v. Hochul* have confirmed that "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful." *District of Columbia v. Heller*, 554 U.S. 570, 626-67 & n.26 (2008); *Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023) (same); *see also Bruen*, *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 81 (2022) (Kavanaugh, J., concurring, joined by Roberts, C.J.) (quoting *Heller*). As *Gazzola* explains, the relevant inquiry in assessing such regulations is whether a "law is so restrictive that it threatens a citizen's right to acquire firearms." 88 F.4th at 196. *Gazzola* relied on *Heller's* presumption to uphold NY laws regulating firearms dealers, without addressing *Bruen's* two-step inquiry. *See id.* at 195 (citing *Heller* and holding that "[n]othing in the Court's more recent decision in *New York State Rifle & Pistol Association v. Bruen* casts doubt on that understanding of the Second Amendment's scope"), 196

2

n.6 (declining "to set out specific guidance as to how a trial court must assess evidence that a commercial regulation is stifling the individual right of access to firearms" and noting that "whatever the standard is, a State cannot impose a regulation on commercial firearms dealers as a class that has the effect of prohibiting law-abiding, responsible citizens from possessing common-use weapons").

*Gazzola's* approach applies to 13 V.S.A. § 4019a, which regulates the transfer of firearms. And Plaintiffs have not come close to overcoming *Heller's* presumption. They presented no evidence that the brief 72-hour waiting period "threatens" any protected right to acquire firearms. *Gazzola*, 88 F.4th at 196. Indeed, they do not dispute and do not challenge that the background check itself could take longer than 72 hours, and would preclude acquisition of a firearm during that time. *See* 13 V.S.A. § 4019a (waiting period is 72 hours after NICS provides unique identification number or 7 business days after dealer initiates background check, whichever occurs first); Tr. 5/23/24 at 51:19-25-52:109 (Plaintiff Bradley, agreeing that purchaser can't take position of firearm during interim period of background check); 90:19-22 (background check can take 7 days and 10 for those under 21). And Plaintiffs cannot dispute that the Supreme Court and Second Circuit have approved of licensing requirements that necessarily impose significantly longer delays than 72 hours. *See* Defs. Opp, Doc. 24, at 27-28. The Second Circuit has also rejected arguments based on convenience, holding that "gun buyers have no right to have a gun store in a particular location, at least as long as their access is not meaningfully constrained" or "a right to travel only short distances or receive a certain type of retail experience." *Gazzola*, 88 F.4th at 197 (cleaned up); *see also McRorey v. Garland*, 99 F.4th 831, 840 (5th Cir. 2024) (quoting *Bruen*, 597 U.S. at 38 n.9 (while "there is some point at which a background check becomes so lengthy that it is 'put towards abusive ends' or subject to *Bruen's* historical

3

framework," "a period of 10 days" does not qualify as a "*de facto* prohibition on possession.").[1] The Court need not go further to reject Plaintiffs' challenge to § 4019a.

**B.** If the Court does apply the *Bruen* inquiry here, Plaintiffs did not satisfy step one. Defs. Opp. 26-27. Both *Gazzola* and Plaintiffs' own briefing confirm that any protected interest in *acquiring* a firearm is not found in the plain text of the Second Amendment but rather, is best described as "derivative," "subsidiary," "ancillary," "corollary," "implie[d]," or found by "implication." *Gazzola*, 88 F.4th at 194-97; Pls. Reply, Doc. 42, at 42-43; *see also Rocky Mountain Gun Owners v. Polis*, No. 23-CV-02563-JLK, 2023 WL 8446495, at *8 (D. Colo. Nov. 13, 2023) ("it is clear the relevant conduct impacted by the waiting period—the receipt of a paid-for firearm without delay—is not covered" by the text of the Second Amendment because "keep" or "possess" are not the equivalent of "acquire" or "obtain.")

That does not mean the Second Amendment is irrelevant; to the contrary, *Gazzola* acknowledges that regulations on the commercial transfer of firearms could be so prohibitive as to violate the Second Amendment. But the presumption runs the other way; these regulations are presumed constitutional. *Gazzola*, 88 F.4th at 196.

A recent decision from the Sixth Circuit confirms that, to satisfy *Bruen*'s step one, "the proposed conduct must be closely tethered to the plain text of the Second Amendment and defined with greater attention and precision because this is how *Bruen* approached the analysis." *Oakland Tactical Supply, LLC v. Howell Twp., Michigan*, No. 23-1179, 2024 WL 2795571, at *5

---

[1] *Gazzola* thus disposes of any argument that having to return a second time to a store is a constitutionally significant burden. *See, e.g.,* Tr. 5/23/24 at 39:14-25 (Plaintiff Bradley's testimony about traveling from Northfield to a store in Waterbury, which according to Google Maps is a distance of about 21 miles, or to Powderhorn in Williston, which Google Maps says is about 47 miles).

(6th Cir. May 31, 2024). And "the right covered by the Second Amendment's plain text is the right to possess and carry arms in case of confrontation." *Id.* The court held that a zoning regulation that restricted certain commercial shooting ranges did not prohibit "conduct squarely covered by the plain text of the Second Amendment." *Id.* at *7. That was true even though the court reasoned that the constitution protects to some degree a right to engage in firearms training. *Id.* at *8. The plaintiffs' claim failed because "they ma[de] no convincing argument that the right extends to training in a particular location or at the extremely long distances Oakland Tactical seeks to provide." *Id.* at *7.

That same reasoning applies here. It is not enough for Plaintiffs to say that the Second Amendment "applies to [their] right to acquire firearms." Pls. Reply, Doc. 42, at 42. To satisfy *Bruen's* step one, Plaintiffs must show that the Second Amendment protects the precise conduct they seek to engage in, namely, taking immediate possession of a firearm upon purchase, without even a brief delay. Defs. Opp. 26-30; *see Oakland Tactical*, 2024 WL 2795571 at *5-8. And they have not done so. Defs. Opp. 26-30.

**C.** As for *Bruen's* step two, should the Court reach that issue, Defendants have shown that the Founding generation would have had no expectation of immediate acquisition of a firearm, and a waiting period is akin to historical licensing requirements and prohibitions on possessing firearms while intoxicated. Defs. Opp, Doc 24, at.30-36; *see Rocky Mountain* 2023 WL 8446495, at *8-9 (the "Founders would not have expected instant, widespread availability of the firearm of their choice.")

Plaintiffs argue that licensing requirements are not the same as a waiting period. The test, however, is whether those historical regulations are *analogous* to a waiting period. Defs. Opp., Doc 24, at 33-36. Waiting periods have the same *or lesser* impact, namely, a brief delay, and they

5

serve the same purpose—to prevent those who will mis-use firearms from acquiring them. That is sufficient under *Bruen* and *Antonyuk*. Defs. Opp., Doc 24, at 30-36.

**D.** The evidence proffered by Plaintiffs at hearing undermined rather than supported their claims. Plaintiff Bradley candidly admitted that the waiting period didn't affect him because of the firearms he already owns. Tr. 5/23/24 at 38:19-22 (Q: ". . .does not being able to take it home immediately, does that have any -- any harmful effect on you?" A: "To me, no."). He also admitted that "many" firearms purchases are "impulsive," *Id.* at 42:3-10—confirming the Legislature's judgment that a brief delay in acquisition serves to deter the impulsive mis-use of firearms. In addition, far from showing that ordinary, law-abiding customers urgently need to acquire firearms, both Plaintiffs testified that many purchasers wait much longer than 72 hours to pick them up. Tr. 5/23/24 at 74:19-21 ("very few customers" come back at 72 hours); *id.* 42:18-25-43:1-5.

**II.    Vermont's LCM restriction is a modest restriction on use, not a complete ban on any type or class of firearm.**

**A.** Plaintiffs' own testimony at the hearing confirmed that their framing of 13 V.S.A. § 4021 as a "complete prohibition" or "ban" on a type or class of firearm is wrong. *See, e.g.,* Pls. Mem., Doc. 2-1, at 9, 14-15. Plaintiffs repeatedly testified that common firearms, like Glock semiautomatic handguns, may be used with compliant magazines. Tr. 5/23/24 at 12:20-13:23 ("there's any number of magazines" and "a great deal of flexibility"); 19:9-14, 20; 47:13-15, 48:5-10, 51:6-11, 66:1-2, 8-15, 83:21-22, 84:5-85:6, 89:8-25, 86:1-17, 87:8-18.[2] There's no ban

---

[2] Plaintiff Cleary claimed that for one firearm, the CZ-Shadow, "[t]hey don't make" a compliant magazine." Tr. 5/23/24 at 66:23-25; *id.* at 71:6-8 ("They do not even manufacture a compliant magazine for that firearm."). Confronted at the hearing with an advertisement for a compliant magazine, *see* Ex. 13, he at first denied it, Tr. 5/23/24 at 88:16-18; in a post-hearing "correction,"

and, indeed, no regulation that prevents Plaintiffs from keeping or carrying firearms. *E.g.,* Tr. 5/23/24 at 51:16-18 (Plaintiff Bradley, admitting VT law still allows concealed carry). The LCM restriction is, at most, a modest restriction on use that is aimed at the size of the ammunition magazine—not the firearm itself.

Because Plaintiffs' framing of the issue is wrong, their arguments fail. As Defendants have explained, their arguments fail at *Bruen's* step one, because the plain text of the Second Amendment does not extend to large-capacity magazines. Defs. Opp., Doc. 24, at 10-17. As with the waiting period, *see supra* 4, a holding that Plaintiffs' claim here fails at step one is not a holding that the Second Amendment has no application to restrictions on ammunition. Plaintiffs have to show not just that the Second Amendment extends to ammunition or magazines to some degree, but that it presumptively protects this precise conduct: magazines larger than 15 rounds for a handgun or 10 rounds for a long gun. Given the undisputed evidence that firearms function with compliant magazines; Professor Allen's testimony regarding real-world incidents of armed self-defense, *e.g.*, Tr. 5/23/24 at 98:5-11, 104:23-105:3, 109:18-25; Ex. 1; and the fact that large-capacity magazines were unknown at the Founding, Defs. Opp, Doc. 24, at 20-22, Spitzer Dec. ¶¶ 20-21, 25-46; Tr. 6/03/24 at 9:9-10:4. Plaintiffs cannot make this showing.

**B.** Plaintiffs' criticisms of Dr. Spitzer's historical evidence do not help their position. What matters for purposes of the historical record is that American governments have long regulated aspects of weapons, firearms, and accoutrements that were particularly associated with dangerousness and offensive, assaultive uses. That includes gunpowder storage regulations, regulations on concealed carry, restrictions on carrying weapons in public places, restrictions on

---

he now admits that it "purports to be usable" but claims it is (for some unspecified reason) "inferior." Doc. 63-3, ¶ 8.

7

weapons used offensively or that harmed innocents (like Bowie knives, trap guns, and semiautomatic and automatic weapons). Defs. Opp., Doc 24, at 23-25. Restricting large-capacity magazines, which are commonly used in mass shootings and associated with more fatalities and injuries, Tr. 5/23/24 at 111:15-114:1, falls well within this historical tradition.

**III.     Plaintiffs have not made the required "strong" showing of irreparable harm.**

Plaintiffs' hearing testimony confirms that they cannot show irreparable harm, let alone make the "strong showing" required here. *A.H. by & through Hester v. French*, 985 F.3d 165, 176 (2d Cir. 2021) (cleaned up). *See* Defs. Opp., Doc 24, at 4-5, 36-39. Mr. Bradley and Mr. Cleary testified that they already own many firearms and magazines of various sizes, including grandfathered magazines that exceed § 4021's limits. Tr. 5/23/24 at 18:4-5 ("I own many firearms. And yes, I own pistols, rifles, and shotguns."); 30:19-23 "(I've collected a number of 30-rounders prior to this law going into effect"); 18:19-24; 46:1-2. Mr. Bradley testified that he keeps a weapon for self-defense in his home with grandfathered magazines that are 20 years old, an admission that raises serious doubts about any urgent need for new magazines). Tr. 5/23/24 at 20:17-18; *see also* 30:13-15 (Bradley owns grandfathered magazines for AR-15 that are "20, if not 30" years old). They also testified that they can obtain new magazines that comply with § 4021's limits. Tr. 5/23/24 at 35:20-25-36:1-3, 47:13-15, 48:5-10. 66:1-2, 8-15, 85:7-21, 86:1-17. Given that Vermont law imposes no limitations on the number of compliant magazines they may own or carry on their person, their testimony shows that their Second Amendment right to bear arms for self-defense are fully intact, unscathed by the laws at issue here. Their *preference* to acquire new magazines that exceed § 4021's limits falls far short of the "strong showing" required for injunctive relief here.

Next, Plaintiffs' witnesses testified about a collection of claimed financial consequences flowing from the challenged laws, but monetary harms are not irreparable. Mr. Cleary testified

8

that Vermont gun sellers might be losing business to sellers in other states that do not have magazine size limitations, Tr. 5/23/24 at 69:14-25; 70:13-18, that he has lost sales due to § 4021, Tr. 5/23/24 at 70:19-23; 77:16-78:3 (testifying that he believes he has lost sales "multiple times a week"), and that he believes people who would otherwise travel relatively long distances to buy firearms at his store are choosing not to, in order to avoid having to make separate trips to purchase and take possession of firearms, as required by the waiting-period law. Tr. 5/23/24 at 71:9-72:12. Mr. Bradley testified that he believes retailers might be losing money because "many sales can be impulsive" (the exact harm the waiting-period seeks to remedy) or because people can't buy guns on short notice for "a hunt or an event." Tr. 5/23/24 at 42:7-17. He also speculated that people might be choosing not to attend fundraising banquets held by the Federation and its member organizations because of the "hassle" of having to make a second trip to pick up a firearm they win in a raffle. Tr. 5/23/24 at 45:9-21. These claimed financial harms—none of which were even quantified by Plaintiffs—cannot justify the extraordinary remedy of a preliminary injunction blocking enforcement of state laws.

In sum, Plaintiffs' hearing testimony only amplified the deficiencies in their motion papers. Their failure to make a "strong showing" of irreparable harm on its own means their motion must be denied.

## CONCLUSION

Plaintiffs' motion for a preliminary injunction should be denied.

DATED at Montpelier, Vermont, this 13th day of June 2024.

>                                  STATE OF VERMONT
>
>                                  CHARITY R. CLARK
>                                  ATTORNEY GENERAL

           By:      */s/ David R. Groff*
                   David R. Groff
                   Assistant Attorney General
                   Office of the Attorney General
                   109 State Street
                   Montpelier, VT 05609-1001
                   (802) 828-1101
                   David.Groff@vermont.gov

                   Bridget Asay
                   Michael Donofrio
                   STRIS & MAHER LLP
                   15 East State Street, Suite 2
                   Montpelier, VT  05602
                   (802) 828-4285
                   basay@stris.com
                   mdonofrio@stris.com

                   Counsel for Defendants